UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN M. VAZQUEZ,

                              Plaintiff,

               -v-

CITY OF NEW YORK; CYNTHIA BRANN, Commissioner,
for the NYCDOC; DANA ROTH, Inspector General for the
NYCDOC; DERRICK CEPHAS, Chairman for the Board of
Correction; JOSEPH CAPUTO, Warden of RNDC;
UNKNOWN CORT, Deputy Warden of RNDC; UNKNOWN
FERRARAS, Deputy Warden of RNDC; UNKNOWN
CORPORAN; UNKNOWN APONTE, Supervising Captain for
RNDC; UNKNOWN USHER, Correction Officer for RNDC;
UNKNOWN HERRERA, Correction Officer for RNDC; JEAN
RENE, Warden for OBCC; JOSEPH GRIMA, Deputy Warden
for OBCC; JOHN/JANE DOE, Deputy Warden of OBCC;
UNKNOWN SMALLS, Supervising Officer for OBCC;
UNKNOWN HICKS, Supervising Officer for OBCC;
UNKNOWN HICKS, Correction Officer for OBCC;
UNKNOWN ALEXANDER, Correction Officer for the ESU;
JOHN DOE, Supervising Captain ESU; NEW YORK CITY
HEALTH & HOSPITALS INC.; LAURA MELLO, Records
Access Officer for the NYCDOC; JOHN MORLEY, Director of
Health for the NYSDOCCS; KAY ARNOLD, Director Health
for ACF; DAVID WILLIAMS, Supervising Physician for ACF;
ARTHUR MENDOLA, Attorney for the Legal Aid Society; 18-
B Panel Attorney for NYS; DANIEL RODGERS, Police
Officer for the NYPD; SHIRA ARNOW, Assistant District
Attorney for the County of New York; ANN E. SCHERZER,
Supreme Judge for the State of New York; COMMISSION ON
JUDICIAL CONDUCT; UNIFIED COURT SYSTEM FOR
THE STATE OF NEW YORK; JOHN/JANE DOE, Director of
Health for the NYCDOC; JOHN/JANE DOES, all those in
active participation,

                              Defendants.

21 Civ. 1573 (PAE)

OPINION &
ORDER TO AMEND

PAUL A. ENGELMAYER, District Judge:

Plaintiff Juan M. Vazquez, proceeding *pro se* and *in forma pauperis*, is currently incarcerated in Attica Correctional Facility. Vazquez filed this complaint under 42 U.S.C. §1983, alleging that defendants—including a wide variety of correctional officers, attorneys, judges, and the New York State court system—violated his constitutional rights. For the reasons set forth below, the Court grants Vazquez leave to file an amended complaint within 60 days of the date of this order.

## I.     Applicable Legal Standards

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

Although the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## II.    Background

In this complaint, styled as a class action, Vazquez names as defendants 31 individuals and entities, including the City of New York, New York City Health + Hospitals Corp. ("H+H"), officials and employees of the New York City Department of Correction ("DOC"), the New York City Board of Correction ("BOC"), the New York State Department of Correction and Community Supervision ("DOCCS"), the New York State Commission on Judicial Conduct, and the Unified Court System for the State of New York.[1]

_____

[1] The named individual Defendants are DOC Commissioner Cynthia Brann, DOC Inspector General Dana Roth, BOC Chairman Derrick Cephas, Robert N. Davoren Center ("RNDC") Warden Joseph Caputo, RNDC Deputy Warden of Security Cort, RNDC Deputy Warden of Programs Ferreras, RNDC Captain Corporan, RNDC Supervising Captain Aponte, RNDC Legal Coordinator Adjanie Cruz, RNDC Correction Officer ("CO") Usher, RNDC CO Herrera, Otis B. Bantam Center ("OBCC") Warden Jean Rene, OBCC Deputy Warden of Security Joseph Grima, OBCC Supervising Captain Smalls, OBCC CO Hicks, Special Operations Division ("SOP")/Emergency Service Unit ("ESU") CO Alexander, DOC Records Access Officer Laura Mello, DOCCS Director of Health John Morley, Attica Director of Health Kay Arnold, Attica Supervising Physician David Williams, Legal Aid Society ("LAS") attorney Arthur Mendola, LAS contracting attorney Robert Levy, New York Police Department ("NYPD") Officer Daniel

The claims arise from three main sets of events—incidents that occurred at Rikers Island, at Attica, and during Vazquez's state criminal proceedings.  Vazquez entered DOC custody on September 17, 2017.  Dkt. 2 ("Compl.") at 19.[2]  He was transferred from the Manhattan Detention Complex to Rikers Island on January 26, 2018.  *Id.*  On January 9, 2020, Vazquez entered DOCCS custody.  *Id.*  Vazquez is "awaiting transfer to federal custody."  *Id.* at 6.  The following is a summary of Vazquez's allegations.

On December 18, 2018, while detained at the RNDC Vazquez "was given a Report of Notice of infraction for fighting and assault," after he was assaulted by another detainee named Williams several days earlier.  *Id.* at 16–17.  Vazquez never received a hearing on this report, and he could not file an "administrative hearing" or appeal because "the infraction was dismissed on the basis of self-defense."  *Id.*  On November 2, 2019, while detained at OBCC, Vazquez fought with a mentally ill detainee named Quiles.  *Id.* at 17.  Vazquez had a hearing, and he was "reprimanded."  *Id.*  Because defendants allegedly failed to provide Quiles with adequate mental health treatment, they failed to protect Vazquez and other detainees from Quiles.  *Id.*  On January 4, 2020, a violent detainee named Jeffrey attacked Vazquez.  *Id.* at 17–18.  A disciplinary report that falsely claimed that Vazquez had fought with Jeffrey was later dismissed because Vazquez was found to have acted in self-defense; he was again not provided with a hearing or appeal

Rodgers, New York County Assistant District Attorney ("ADA") Shira Arnow, and Judge Ann E. Scherzer.  The Doe defendants are the DOC Legal Coordinator, the OBCC Deputy Warden of Security, and the ESU Supervising Captain.

[2] Vazquez's complaint, which is 89 pages long, spans three ECF documents. The Court cites the first of those as "Compl.," the second, which is at docket 2-1, as "Compl. 2d," and the third, which is at docket 2-2, as "Compl. 3d."  The Complaint also attaches several hundred pages of exhibits, which are at dockets 2-3 through 2-12.

process.  Because Vazquez was at that point a "state-sentenced inmate," he "should have been kept separate from" pretrial detainees like Jeffrey.  *Id.* at 18.

According to Vazquez, the assault by Jeffrey "may have been directly related to threats" that defendant Cruz, the RNDC Legal Coordinator, made to Vazquez because of grievances he filed and 311 calls he made about her.  *Id.* at 19.  Although Vazquez has 25 years of paralegal experience, Cruz fired him from his law library job.  She also denied his request for "information" and for notarization, and denied him the minimum of two hours per day in the law library to which he was entitled under DOC regulations.  *Id.* at 21–22.  In addition, Cruz allegedly discriminated against Vazquez because he is Hispanic; deliberately mailed a letter to Vazquez's defense attorney to the wrong address, *id.* at 30; and was verbally abusive to Vazquez, groped him, and behaved in a "sexually derogatory" manner towards him, *id.* at 29.  Defendant Usher observed these events and did nothing to intervene on Vazquez's behalf.[3]  Vazquez claims that after he was convicted, he was transferred to state custody in retaliation for filing complaints.  *Id.* at 24; Dkt. 2-5 at 16.

---

[3] Vazquez also alleges that Cruz and Usher hired unqualified detainees to work in the law library because they were "homosexual" or amenable to engaging in sex acts; permitted sexual acts to occur in the law library and also participated in that conduct; did not hire Spanish-speaking detainees to assist non-English-speaking detainees with their legal work; wasted and abused taxpayer dollars and violated their employment contracts by not working a full day or taking hours-long breaks.  According to Vazquez, Cruz regularly met with detainees for sex once they were released from custody and showed off her "porn star tattoo."  Compl. at 18, 39.  More generally, Vazquez asserts that minorities at Rikers are being "enslaved and employed as collateral to buy, purchase and sell stocks on the markets through the banks"; correction officers are "subservient" to gang members; African American detainees receive preferential treatment over Latino detainees; DOC employees regularly violate the terms of their employment contracts, waste taxpayer dollars, violate criminal laws, and engage in racketeering; and detainees who are not supposed to interact because of status classifications are being housed together.  Compl. at 19, 25, 20; Compl. 2d at 49, 62.

Vazquez further claims that while in the custody of DOC and DOCCS, he has been denied adequate medical care. While in DOC custody, C.O. Alexander allegedly seized Vazquez's medically prescribed footwear; Vazquez was denied a proper mattress or extra bedding to accommodate his sciatica; a doctor told Vazquez that DOC considered surgery for his foot condition, "Halifax limited," to be elective, even though Vazquez was in great pain because of the foot condition; and his referrals to a podiatrist and a neurologist were never acted upon. Vazquez also alleges that DOC failed to send his complete medical history to DOCCS, and that to date he is still not receiving treatment for his medical conditions. Dkt. 2-6 at 26; Dkt. 2-7 at 1, 3. He further claims that DOCCS is failing to take adequate steps to protect him and other prisoners from COVID-19.

Vazquez also asserts that defendants Herrera and John/Jane Does stole his social security card and driver's license, violated his privacy, and used his personal information to open "fraudulent accounts" and incur "financial/legal liabilities" in his name. Compl. 2d at 46.

He further claims that the supervisory defendants had "active" or "constructive" knowledge of all these conditions and failed to remedy them. *Id.* at 49. His numerous complaints about these matters to government agencies, including the New York State Attorney General's Office, the New York State Commission on Judicial Conduct, the Unified Court System for the State of New York, the New York City Department of Investigation, and the New York City Comptroller's Office, were not acted upon. *See* Dkt. 2-4 at 5–6, 10; Dkt. 2-9 at 23; Dkt. 2-11 at 34.

Finally, Vazquez asserts various claims arising out of his criminal case in the New York State Supreme Court against several judges (Scherzer, Carro, and Warhit), an assistant district attorney (Arnow), Vazquez's assigned defense attorneys (Mendola and Levy), a police officer

(Rodgers), and a DOC Freedom of Information Law ("FOIL") officer (Mello) for conspiring to engage in "state sanctioned coercion, intimidation, and retaliation." Dkt. 2-9 at 23. Vazquez was originally represented by a LAS attorney, but his case was reassigned to an 18-b attorney after Vazquez complained about the LAS attorney. Vazquez claims that his attorneys were ineffective and committed legal malpractice, and that one retaliated against him by asking the trial court to order a mental health examination under N.Y. Crim. Proc. L. § 730; that the prosecutor made false statements about needing to obtain a DNA sample from Vazquez when she already had one, even though Judge Carro stated that the case "was not a DNA case"; that the trial judges discriminated against him based on his race by either failing to rule on his *pro se* submissions or improperly denying them; and that the parties conspired to force Vazquez to plead guilty. Compl. 2d at 67–70; Dkt. 2-9 at 3–5, 15.

Vazquez submitted a FOIL request to DOC for the itemized receipt of his property that was inventoried upon his arrest. Vazquez claims that this document would show that he was wearing a belt at the time of his arrest, which would contradict trial testimony, apparently given by Police Officer Rodgers, that Vazquez's pants "were down." Compl. 2d at 57. ADA Arnow allegedly knowingly presented Rodgers's fabricated testimony at trial. *Id.*; Dkt. 2-6 at 21. DOCS FOIL Officer Mello failed to respond to Vazquez's FOIL request, and conspired with the other defendants to violate his right to seek factual evidence to establish an adequate defense. According to Vazquez, Officer Rodgers failed to take statements from African American witnesses. Compl. 2d at 67. Vazquez claims that, after he was convicted, he filed a *pro se* notice of appeal and a motion to file an untimely notice of appeal, but that the Appellate Division, First Department, had no record of receiving those submissions. Compl. 3d at 79. The Office of the Appellate Defender ("OAD") was assigned to represent Vazquez on appeal, and OAD informed

Vazquez that it would file a motion on his behalf. *Id.* at 79–80; Dkt. 2-12 at 1. The First Department ultimately permitted Vazquez's direct appeal to proceed, and it appears to be pending. *See* Compl. at 8; Compl. 3d at 79–80.

Vazquez seeks declaratory and injunctive relief for "any judicial and/or prosecutorial functions," and "equitable relief" and money damages for "acts that are not judicial and/or prosecutorial in nature that are considered to be investigatory, administrative, and/or legislative in nature." Compl. 2d at 66. When Vazquez filed this complaint, he also filed a motion for a temporary restraining order or a preliminary injunction. Dkt. 5. Judge Stanton denied that application without prejudice. Dkt. 7. Vazquez has filed a motion for reconsideration of that denial and a supporting motion. Dkts. 8–9. He also seeks appointment of *pro bono* counsel. Compl. 3d at 85–86.

## III.      Discussion

### A.      Class Claims and Standing

Vazquez seeks to have this matter proceed as a class action. The statute governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself." *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)). Because a nonlawyer cannot bring suit on behalf of others, a *pro se* plaintiff cannot act as a class representative. *Rodriguez v. Eastman Kodak Co.*, 88 F. App' x 470, 470 (2d Cir. 2004) (summary order) (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)); *Phillips v. Tobin*, 548 F.2d 408, 412–15 (2d Cir. 1976). Vazquez is not an attorney, and may not represent any party other than himself. Accordingly, his request that this matter proceed as a class action is denied.

Moreover, under Article III's standing requirement, a party must show (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized,' *i.e.*, which 'affect[s] the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation omitted).

Vazquez lacks standing as to several of his claims. For example, he asserts that Cruz and Usher failed to hire Spanish-speaking detainees to work in the law library to assist non-English speakers, but he does not allege that he required translation or other assistance from a Spanish speaker and was unable to obtain it. Similarly, he lacks standing to assert generalized claims that DOC employees are corrupt, violated their employment contracts, and wasted taxpayer dollars. Because Vazquez may only allege claims arising from facts suggesting that he personally suffered an injury that is traceable to defendants' conduct and which may be redressed through a favorable judicial decision, such claims may not proceed.

## B. Claims Arising at Rikers Island

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A plaintiff proceeding under § 1983 must also allege facts showing defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation omitted)). A defendant may not be held liable under § 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Instead, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Additionally, to state a claim against the City of New York, it is not enough for the plaintiff to allege that a municipal employee or agent engaged in some wrongdoing. Instead, he must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 692 (1978)). In other words, to state a § 1983 claim against a municipality, a plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 74, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403, 415 (1997).

The claims that Vazquez appears to have standing to assert, and which could conceivably give rise to viable claims under § 1983, include the following: he was denied disciplinary due process, medical care, reasonable accommodations, and access to the law library; he lost his law

library job and was transferred in retaliation for filing complaints and grievances; COs failed to protect him from violent inmates; he was subjected to race discrimination; and he was subjected to sexual harassment and inappropriate touching.  But the complaint does not contain sufficient facts to state a claim, or to show how each defendant, including those in supervisory positions— such as the wardens, deputy wardens, and BOC officials—were involved personally in the events underlying the complaint.  The Court grants Vazquez leave to file an amended complaint alleging facts to show (1) how each defendant was personally involved in violating his constitutional rights, and (2) that the City of New York may be held liable for what occurred.[4]

### 1.    Medical Care and Reasonable Accommodation

Although the Eighth Amendment protects convicted prisoners against deliberate indifference to conditions that pose a substantial risk of serious harm, the Fourteenth Amendment is the source of such protection for pretrial detainees.  It is unclear whether at the time of the various incidents that Vazquez describes, he was a convicted prisoner or a pretrial detainee, and the Court therefore considers whether he states a claim under either standard.

Deliberate indifference claims include an objective component and a subjective component.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).  "Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'"  *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citation omitted); *see also Ackridge v. Aramark Corr. Food Servs.*, No. 16 Civ. 6301 (KMK), 2018 WL 1626175, at *19 n.19

---

[4] Vazquez arguably pleads sufficient facts regarding the seizure of his medically prescribed footwear, and Cruz's inappropriate sexual conduct towards him.  Because Vazquez is amending his complaint in connection with the other claims, he should reallege these claims and provide any additional facts about those two matters.

(S.D.N.Y. Mar. 30, 2018) (the objective seriousness-of-conditions prong "is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment").

The subjective component differs for claims under the Eighth and Fourteenth Amendments. *See Darnell*, 849 F.3d at 34–35. Under the Eighth Amendment, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, an official is not liable under the Eighth Amendment for "failure to alleviate a significant risk that he should have perceived but did not." *Id.* at 838. In contrast, an official can be liable under the Fourteenth Amendment when he "knew, *or should have known*, that the condition posed an excessive risk to health or safety," and intentionally or "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee." *Darnell*, 849 F.3d at 35 (emphasis added) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)). A challenge to medical care based on the inadvertent or negligent failure to provide adequate care does not raise a constitutional claim under either the Fourteenth Amendment or the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Vazquez alleges that while he was in DOC custody, he was denied surgery, extra bedding, and medically prescribed shoes for a painful foot condition, and did not see a podiatrist or a neurologist although both were recommended. But he does not allege that any individual should have known of his serious medical need and denied him medical attention, and was deliberately indifferent to a serious risk of harm to Vazquez.

Moreover, many prisoners held in Rikers Island have complained about the quality of their mattresses; many of those cases were dismissed for failure to state a claim. *See Howard v.*

*City of New York*, No. 12 Civ. 4069 (PAE) (JCF) 2013 WL 504164 (S.D.N.Y. Feb. 11, 2013)

(adopting Report and Recommendation in full and dismissing mattress cases for failure to state a

claim with leave to file amended complaints). To state a claim for an inadequate bed, a prisoner

must allege facts suggesting that he suffered from a medical condition that required "a non-

standard bed to protect against serious damage to his future health" or that the prisoner's mattress

created such a medical condition. *Patterson v. Ponte*, No. 16 Civ. 3156 (PAE) (JCF), 2017 WL

1194489, at *6 (S.D.N.Y. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL

1405753 (S.D.N.Y. Apr. 17, 2017).

In his amended complaint, Vazquez should provide facts showing that he suffered from a

serious medical condition that posed an unreasonable risk of serious damage to his health, and

that DOC employees were deliberately indifferent to that risk. Vazquez should explain how the

deprivation of a special mattress or bedding caused a worsening of a serious medical condition.

### 2. Failure to Protect

Vazquez further asserts that jail officials failed to protect him from violent inmates.

Correction officials must take reasonable measures to ensure the safety of detainees and

prisoners, including protecting them against violence by other prisoners. *Farmer*, 511 U.S.

at 834. The failure to protect a prisoner constitutes cruel and unusual punishment when

correction officials exhibit "'deliberate indifference' to a substantial risk of serious harm" to the

prisoner. *Id*. at 828; *Morales v. N.Y. State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988). To be

liable for violating a prisoner's Eighth Amendment rights on this basis, correction officials must

be subjectively aware of an excessive risk to the prisoner's health or safety and disregard it.

*Farmer*, 511 U.S. at 837–38; *see Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)

("Deliberate indifference requires more than negligence, but less than conduct undertaken for the

very purpose of causing harm.").

Here, Vazquez alleges that on three occasions he was assaulted by violent or mentally ill detainees. These allegations do not give rise to an inference that any defendant knew or should have known that the other detainees posed a serious risk of harm to him and was deliberately indifferent to that risk. If there are additional facts to support this claim, Vazquez may assert them in his amended complaint.[5]

### 3. Law Library Access

Prisoners "have a constitutional right of access to the courts," and this generally "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quoting *Bounds v. Smith,* 430 U.S. 817, 821, 828 (1977), *abrogated on other grounds*, *Lewis v. Casey*, 518 U.S. 343 (1996)).[6] "[P]rison law libraries and legal assistance programs are not [constitutionally mandated] ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis*, 518 U.S. at 351 (citation omitted).

A claim for deprivation of access to the courts requires two allegations: (1) a valid underlying cause of action separate from the right-of-access claim; and (2) frustration or

---

[5] Vazquez asserts that he was improperly housed with pretrial detainees after he was convicted. A prisoner does not have a constitutional right to be housed in a particular unit or facility. *See McMahon v. Fischer*, 446 F. App'x 354, 357 (2d Cir. 2011) (summary order) ("A prisoner has no right to housing in a particular facility . . . ." (citing *Matiyn v. Henderson*, 841 F.2d 31, 34 (2d Cir. 1988))). If Vazquez believes that any defendant knowingly housed him in a dangerous situation, he should elaborate on that contention in his amended pleading.

[6] "[T]he Supreme Court has grounded the right of access to the courts in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment." *Bourdon*, 386 F.3d at 95 (citation omitted).

hindrance of the litigation caused by the defendant's actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. And mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (citing *Jones v. Smith*, 784 F.2d 149, 151–52 (2d Cir. 1986)).

Moreover, prison law libraries are merely "one constitutionally acceptable method to assure meaningful access to the courts," *Bounds*, 430 U.S. at 830, and "the provision of counsel can be a means of accessing the courts." *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001). "Because attorneys, by definition, are trained and qualified in legal matters, when a prisoner with appointed counsel claims that he was hindered by prison officials in his efforts to defend himself or pursue other relevant legal claims," such prisoner must show that, "on the facts of his case, the provision of counsel did not furnish him with the capability of bringing his challenges before the courts." *Bourdon*, 386 F.3d at 98.

Here, the facts in the complaint do not show that Vazquez's right of access to the courts has been unconstitutionally infringed upon. He does not allege that any limits on his law library time, or the amount or quality of the facility, actually hindered his efforts to pursue a nonfrivolous legal claim. He claims that the state court did not receive his notice of appeal, and he attributes this to jail officials. But even if that were the case, counsel for Vazquez sought an extension of time to file a notice of appeal, the state court granted that application, and his direct appeal is now pending. *See* Compl. at 8; Compl. 3d at 79–80. Accordingly, the facts do not show that he suffered an actual injury in litigating his case in the state court.

### 4. Retaliation and Discrimination

To allege a First Amendment retaliation claim under § 1983, a prisoner must ultimately show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Filing a grievance is protected First Amendment activity. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). To qualify as an adverse action, retaliatory conduct must be conduct that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. . . . Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes*, 239 F.3d at 492–93. A plaintiff can establish a causal connection giving rise to an inference of retaliation, for example, by showing that the protected activity was "very close" in time to the adverse action. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001); *see, e.g.*, *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002). Prisoners' claims of retaliation must be examined with particular care, however, because they are "'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham*, 89 F.3d at 79 (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Similarly, prisoners have no constitutionally protected interest in a particular job. *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). But a prisoner could state a claim where he alleges, for example, that he was terminated from a prison job because of his race, *see LaBounty v. Adler*, 933 F.2d 121, 124 (2d Cir. 1991), or in retaliation for exercising his constitutional rights, *see Reynolds v. Barrett*, 741 F. Supp. 2d 416, 438 (W.D.N.Y. 2010), *aff'd*, 685 F.3d 193 (2d Cir. 2012).

Vazquez alleges that he lost his prison job, and was transferred,[7] in retaliation for filing grievances and complaints—and also because of his race. But there are few, if any, facts in the complaint to support these inferences or to show a causal connection between Vazquez's activity protected under the First Amendment or his race and the events described. The Court thus grants Vazquez leave to assert facts plausibly alleging claims of discrimination or retaliation.

### 5. Procedural Due Process

"In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a [liberty or] property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). The threshold question for a due process claim "is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (quoting *Narumanchi v. Bd. of Trs. of the Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)).

For prison disciplinary proceedings where a liberty or property interest is implicated, an inmate is "to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Convicted prisoners do not have a liberty interest in a disciplinary hearing unless the punishment subjects them to "atypical and significant

---

[7] Vazquez's assertion that he was transferred to state custody after he was convicted suggests that he would have been transferred regardless of a retaliatory motive. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 373 (S.D.N.Y. 2011) (holding that plaintiff could not prevail on retaliation claim if "even absent the retaliatory motivation, the plaintiff would have received the same punishment").

hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

It is not clear that Vazquez can state a plausible claim that his procedural due process rights were violated. It is not clear, for example, whether Vazquez was a pretrial detainee or a convicted prisoner when these events occurred; if the latter, he would need to show that the underlying events resulted in an atypical and significant hardship as forth in *Sandin*. Vazquez also asserts that the disciplinary charges filed against him were dismissed without a hearing; thus it is not clear what would have been accomplished if such proceedings had taken place, or how the outcome would have been different. The Court thus also grants Vazquez leave to amend his Complaint to bolster these allegations, if possible.

### C. Claims Arising from Criminal Proceedings

#### 1. Claims Against State Agencies

The Court must dismiss Vazquez's § 1983 claims against state agencies under the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (cleaned up). This immunity shields States from claims for monetary damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72–74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).

Congress has not abrogated the States' immunity for claims under § 1983. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). And New York has not waived its immunity to such claims in federal court. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Court thus dismisses Vazquez's § 1983 claims against DOCCS, the Commission on Judicial Conduct, and the Unified Court System for the State of New York under the Eleventh Amendment.[8] *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))).

## 2. Claims Against Judges

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation[.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

---

[8] In any event, Vazquez's claims against these agencies arise from their failure to investigate his complaints, but there is no constitutional or otherwise enforceable right to an investigation by government officials. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989) (Due Process Clause generally confers no affirmative right to governmental aid); *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (there is "no constitutional right to an investigation by government officials") (citation omitted). Any exceptions to this rule do not apply to the facts alleged. *See Dwares v. City of New York*, 985 F.2d 94, 98–99 (2d Cir. 1993), *overruled on other grounds as recognized in Montero v. City of Yonkers*, 890 F.3d 386, 404 (2d Cir. 2018).

42 U.S.C. § 1983; *see also* 28 U.S.C. § 1915(e)(2)(b)(i), (iii) (dismissal required where claim

seeks monetary relief "against a defendant who is immune from such relief").

Judicial immunity does not apply when the judge takes action outside of a judge's

"judicial capacity," or when the judge takes action that, although judicial in nature, is taken "in

the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 9–10; *see also Bliven*, 579 F.3d

at 209–10 (describing actions that are judicial in nature). "[T]he scope of [a] judge's jurisdiction

must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*,

435 U.S. 349, 356 (1978).

Vazquez's claims against Judges Scherzer, Carro, and Warhit arise out of their rulings,

actions, and omissions while presiding over his criminal case. Such conduct falls within the

scope of their judicial capacities and jurisdiction. The Court therefore dismisses Vazquez's

claims against these defendants under the doctrine of judicial immunity.

### 3.        Claims Against a Prosecutor

Prosecutors are also absolutely immune from civil suits for damages for acts committed

within the scope of their official duties where the challenged activities are not investigative in

nature but, rather, are "intimately associated with the judicial phase of the criminal process."

*Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*,

424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (absolute

immunity is analyzed under "functional approach, which looks to the nature of the function

performed, not the identity of the actor who performed it" (cleaned up)). In addition, prosecutors

are absolutely immune from suit for acts that may be administrative obligations but are "directly

connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *cf.*

*Warney v. Monroe County*, 587 F.3d 113, 125 (2d Cir. 2009) (prosecutor absolutely immune from

liability under § 1983 for alleged *Brady* violation); *Shmueli v. City of New York*, 424 F.3d 231,

237 (2d Cir. 2005) (prosecutor "entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information," notwithstanding the "'reprehensible'" nature of that conduct (cleaned up)).

Here, Vazquez's claims against ADA Arnow are based on her alleged misconduct within the scope of her official duties and associated with the judicial phase of the criminal proceedings. His claims against Arnow are therefore dismissed because they seek monetary relief against a defendant who is immune from suit.  28 U.S.C. § 1915(e)(2)(b)(i), (iii); *see Collazo v. Pagano*, 656 F. 3d 131, 134 (2d Cir. 2011) (claim against prosecutor is frivolous if it arises from conduct "initiating a prosecution [or for] presenting the State's case" (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991))).

### 4.    Claims Against Defense Attorneys

Private parties are not generally liable under § 1983.  *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Absent special circumstances suggesting concerted action between an attorney and a state representative, *see, e.g.*, *Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a defendant by private counsel in state proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender, *see Bourdon*, 386 F.3d at 90; *Polk County v. Dodson*, 454 U.S. 312, 318–19 (1981) (public defenders do not act "under color of state law" and therefore are not subject to suit under § 1983); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1977) (same for court-appointed lawyers).

As defendants Mendola and Levy, who were assigned to represent Vazquez in criminal proceedings, are private parties who do not work for any state or other government body, the Complaint has not stated a claim against these defendants under § 1983.

### 5.    Claims Against FOIL Officer Mello

Section 1983 does not provide a claim for "violations arising solely out of state law." *Driscoll v. Townsend*, 60 F. Supp. 2d 78, 81 (S.D.N.Y. 1999); *see also Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (holding that "state statutes do not create federally protected due process entitlements to specific state-mandated procedures.").  As such, a violation of New York FOIL, Pub. Off. L. § 87 *et seq.*, does not, standing alone, support a § 1983 claim.  *See, e.g.*, *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 535 (S.D.N.Y. 2014) ("[M]any of Plaintiff's allegations—e.g., that the Town refused to fulfill FOIL requests . . . —involve state law, not federal constitutional, violations."); *Collins v. City of New York*, 923 F. Supp. 2d 462, 473 (E.D.N.Y. 2013) ("A violation of New York's FOIL does not, standing alone, support a § 1983 claim.").  Instead, an allegedly wrongful denial of a FOIL request is a matter of state law that is addressable in an Article 78 proceeding.  *See Hudson v. County of Dutchess*, 51 F. Supp. 3d 357, 371 (S.D.N.Y. 2014); *Hayes v. Perotta*, 751 F. Supp. 2d 597, 602 (S.D.N.Y. 2010) (plaintiff's claim that the local governmental unit wrongly refused to provide him with information that he requested was "governed by New York's Freedom of Information Law," not § 1983).

Vazquez's allegation that FOIL Officer Mello failed to respond to his FOIL request does not give rise to a constitutional claim, and thus the facts alleged do not state a viable § 1983 claim.[9]

---

[9] A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3). Because it is not clear that Plaintiff can assert any federal claims falling within the Court's

### 6.    Claims Seeking Relief from Criminal Proceedings

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that a federal court may not intervene in a pending state-court criminal proceeding in the absence of "special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate." *Gibson v. Berryhill*, 411 U.S. 564, 573–74 (1973). *Younger* abstention is appropriate as to only three categories of state-court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013). A state criminal proceeding ordinarily provides an adequate forum to raise federal constitutional challenges to a prosecution. *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994). Thus, the *Younger* abstention doctrine applies when a plaintiff seeks a federal court's intervention in a state criminal action while that plaintiff's criminal appeal is pending. *See Randolph v. Vance*, No. 19 Civ. 6377 (CM), 2019 WL 3564562, at *1–2 (S.D.N.Y. Aug. 5, 2019).

Vazquez seeks this Court's intervention in his state criminal action, which appears to be pending on appeal. *See* Compl. at 8; Compl. 3d at 79–80. The Court dismisses Vazquez's claims for injunctive relief arising from his pending state-court criminal action under the *Younger* abstention doctrine. If Vazquez seeks release, or is challenging the constitutionality of his conviction, he may file a petition for habeas corpus relief under 28 U.S.C. § 2254 after exhausting his available state-court remedies. *See* 28 U.S.C. § 2254(b)(1)(A).[10]

---

jurisdiction, it will determine at a later stage whether to exercise its supplemental jurisdiction over this and any other state law claims set forth in the complaint.

[10] When success on a plaintiff's civil rights claim would "necessarily imply the invalidity of his conviction or sentence," the plaintiff also cannot proceed with the civil rights action unless the

### D.    Claims Arising at Attica

Under 28 U.S.C. § 1391(b), a civil action may be brought in (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  Under § 1391(c), a "natural person" resides in the district where the person is domiciled, and an "entity with the capacity to sue and be sued" resides in any judicial district where it is subject to personal jurisdiction with respect to the civil action in question.  *See* 28 U.S.C. § 1391(c)(1), (2).

Venue is not proper in this Court for Vazquez's claims arising at Attica.  None of the underlying events occurred in this District, and no Attica defendant appears to reside in this District.  Attica is located in Wyoming County, which is located in the Western District of New York.  *See* 28 U.S.C. § 112(d).

Vazquez's claims arising at Attica are dismissed without prejudice.  If Vazquez wishes to pursue his claims arising at Attica, he may file a new civil action in the United States District Court for the Western District of New York.

### E.    Motion for *Pro Bono* Counsel

Vazquez requests *pro bono* counsel.  The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, the plaintiff's efforts to obtain a

---

conviction or sentence has been invalidated.  *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  Because Vazquez's conviction has not been overturned or otherwise called into question, he cannot proceed with § 1983 claims for damages that would necessarily be inconsistent with his conviction.

lawyer, and plaintiff's ability to gather the facts and present the case if unassisted by counsel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers*, 802 F.2d 58, 60–62 (2d Cir. 1986). Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172. Because it is too early in the proceedings for the Court to assess the merits of the action, Vazquez's motion for counsel is denied without prejudice to renewal at a later date.

## F.      Request for Emergency Relief

Vazquez renews his application for a temporary restraining order or preliminary injunction, and seeks reconsideration of Judge Stanton's order denying such relief. To obtain such relief, Vazquez must show: (1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest favors granting an injunction. *See Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010); *Wright v. Giuliani*, 230 F.3d 543, 547 (2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

As discussed in this order, Vazquez's submissions do not demonstrate: (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. Accordingly, his renewed request for preliminary injunctive relief is denied.

**LEAVE TO AMEND**

Vazquez proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill*, 657 F.3d at 123–24; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

In light of Vazquez's *pro se* status, the Court grants him 60 days' leave to amend his complaint to detail his claims that he was subjected to unconstitutional conditions of confinement in Rikers Island.

The Court does not, however, grant Vazquez leave to replead his claims against immune parties (*i.e.*, judicial officers, prosecutors, and state agencies); parties against whom § 1983 claims may not lie (*i.e.*, private defense attorneys and state FOIL officers); claims that are barred by the *Younger* abstention doctrine (*i.e.*, those seeking to interfere with pending state criminal charges against Vazquez); or claims for which venue is not proper in this District (*i.e.*, those arising out of Vazquez's detention at Attica in the Western District of New York). Nor does the Court grant leave to replead his class claims, given his *pro se* status. Leave to replead such claims would be futile, and even a liberal reading of the complaint does not give "any indication that a valid claim might be stated" as to these allegations in this action. *Cuoco*, 222 F.3d at 112 (quoting *Gomez*, 171 F.3d at 795).

In the statement of claim of the amended complaint, Vazquez must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the

caption. Essentially, the body of Vazquez's amended complaint must tell the Court: who violated his rights; what facts show that his rights were violated; when such violation occurred; where such violation occurred; and why Vazquez is entitled to relief. Because Vazquez's amended complaint will completely replace, not supplement, the original Complaint, any facts or claims that he wishes to maintain must be included in the amended complaint.[11]

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Vazquez and note service on the docket. Vazquez's claims arising at Attica are dismissed without prejudice to any complaint he may file in the United States District Court for the Western District of New York in connection with those claims. His claims relating to his ongoing state criminal proceedings are dismissed for failure to state a claim on which relief may be granted, and on immunity grounds. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The Court grants Vazquez leave to file an amended complaint to assert claims regarding alleged unconstitutional conditions of confinement at Rikers Island. The amended complaint should comply with the standards set forth above. Vazquez must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 21-CV-1573 (PAE). An Amended Complaint form is attached to this order. No summons will issue at this time. If Vazquez fails to comply within the time allowed, and he cannot show good cause to excuse such

---

[11] At this stage of the case, Vazquez need not prove his allegations, provide documentary evidence, or cite case law. What the Court requires is a clear and concise recounting of the events giving rise to this complaint, and an explanation of how each named defendant was personally involved in what occurred. Accordingly, Vazquez need not attach supporting documents or other materials to his amended complaint.

failure, this action will proceed solely with respect to the claim that Officer Cruz groped him and sexually harassed him, and that his medically prescribed footwear was seized.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 17, 2021
New York, New York

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

_____CV_____

(Include case number if one has been assigned)

**AMENDED**

**COMPLAINT**

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.  BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐  **Federal Question**

☐  **Diversity of Citizenship**

### A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B.  If you checked Diversity of Citizenship

#### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
　　　　　　　　(Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                          (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

| |
|---|
| Street Address |

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1: _____

First Name                            Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                         State             Zip Code

Defendant 2: _____

First Name                            Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                         State             Zip Code

Defendant 3: _____

First Name                            Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                         State             Zip Code

Defendant 4: _____

First Name                    Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                  State              Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.