UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUAN M. VAZQUEZ,

                                    Plaintiff,

                    -v-

CITY OF NEW YORK et al.,

                                    Defendants.

---

21 Civ. 1573 (PAE) (VF)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

*Pro se* plaintiff Juan Vazquez brings this action against the City of New York (the "City") and Dana Roth, Inspector General for the City's Department of Correction ("NYCDOC") (together, "defendants"), and others,[1] for violating his civil rights under 42 U.S.C. § 1983. Vazquez is currently incarcerated at Attica Correctional Facility. He alleges that defendants violated his civil rights during his incarceration by, *inter alia*, denying him access to sufficient medical care, failing to follow administrative procedures while sanctioning him for fighting with other inmates, transferring him to other correctional facilities as retaliation for reporting misconduct by correctional staff, and discriminating against him on the basis of his race.

---

[1] Vazquez also brings claims against numerous other defendants, including governmental entities, state actors involved in administering corrections programs, named individuals, and John and Jane Doe defendants whose identities are unknown to him. *See generally* Dkt. 18-1 ("AC"). Because this decision relates solely to a motion to dismiss by the City and Roth, it does not address the claims against the other defendants, or identify them here.

Before the Court is a motion by the City and Roth to dismiss all claims against them, under Federal Rule of Civil Procedure 12(b)(6).[2] *See* Dkts. 55–56.  On June 17, 2022, the Hon. Valerie Figueredo, United States Magistrate Judge, issued a Report and Recommendation recommending the Court grant defendants' motion in full, for failure to state plausible Section 1983 claims of deliberate indifference to medical needs, retaliatory transfer, discrimination, and procedural due process.  Dkt. 66 (the "Report").  Vazquez has filed objections to the Report, Dkt. 68 (the "Objections"), and the City has filed a response, Dkt. 90 (the "Response").  For the following reasons, the Court adopts the Report in full.

I.      **Background**

    A.      **Factual Background**[3]

The Court adopts the Report's account of the facts and procedural history.  The following summary captures the limited facts necessary to assess the issues presented.

Between September 17, 2017, and January 9, 2020, Vazquez was under NYCDOC's custody while awaiting transfer into federal custody.  *See* AC ¶¶ 69, 70.  Between September 18, 2017, and on or about January 26, 2018, he was at the Manhattan Detention Center ("MDC");

---

[2] The Second Circuit has a "general policy of disapproving *sua sponte* dismissals of *pro se* prisoner petitions before service and appearance." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987); *see Massop v. Coughlin,* 770 F.2d 299, 301 (2d Cir. 1985) (per curiam).  Accordingly, although the reasoning here may support dismissal as to claims against some as-yet-unserved defendants, the decision is limited to the claims against the City and Roth.

[3] Neither party has objected to the statement of facts in the Report and Recommendation.  The Court therefore adopts that statement of facts in full.  The Court assumes familiarity with the Report and sets out here only the limited facts necessary to put the issues at hand in context. These are primarily drawn from the First Amended Complaint.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

between January 26, 2018, and on or about June 18, 2019, he was at the Robert N. Davoren

Complex on Rikers Island ("RNDC"); and between June 18, 2019, and January 9, 2020, he was

at the Otis Bantum Correctional Center ("OBCC"), also on Rikers Island. *See id.* ¶¶ 112, 261.

On January 9, 2020, Vazquez was transferred to state custody. *See id.* ¶¶ 347, 494.

Vazquez's claims span his incarcerations at MDC, RNDC, and OBCC.

### 1.      Assaults by Other Inmates

The AC alleges that Vazquez was assaulted multiple times by other inmates.

On December 14, 2018, at RNDC, Vazquez was involved in an altercation with an

inmate who suffered from mental health issues. *See id.* ¶¶ 73–74. Vazquez, without a formal

hearing, received a disciplinary infraction for the altercation that was ultimately dismissed after a

determination that Vazquez acted in self-defense. *Id.* ¶ 76.

On November 2, 2019, at OBCC, Vazquez was involved in an altercation with a different

inmate who also suffered from mental health issues. *See id.* ¶¶ 80–81. Before the altercation,

the AC alleges, the NYCDOC had been aware of this inmate's dangerousness to others, but did

not adequately protect Vazquez and others from the substantial risk of violence posed by the

inmate. *Id.* ¶¶ 83–86, 91. Vazquez, at a formal hearing, was "reprimanded" for the altercation,

*id.* ¶ 81, which he appealed, *id.* ¶ 89. The NYCDOC did not respond to the appeal. *See id.* The

failure to respond, the AC alleges, is part of a practice by the NYCDOC to cover up violence at

Rikers Island, *id.* ¶¶ 89, 93, which, in turn, promotes more violence, *id.* ¶ 91.

On January 4, 2020, again at OBCC, Vazquez was involved in an altercation with

another inmate. *Id.* ¶ 94. Vazquez received a disciplinary infraction for the altercation, which

was ultimately dismissed after a determination that Vazquez acted in self-defense. *Id.* ¶¶ 97, 99.

RNDC officials failed to protect Vazquez and others from the inmate, who was known to be

violent. *Id.* ¶ 96. The AC alleges that RNDC legal coordinator Adjanie Cruz, against whom

Vazquez had recently made sexual abuse claims, may have provoked the inmate's violence as a form of retaliation against Vazquez. *Id.* ¶¶ 102, 104, 106, 108.

### 2.      Sexual Abuse and Subsequent Retaliation and Discrimination

The AC alleges that Vazquez suffered retaliation for reporting sexual abuse.

Cruz made "sexually derogatory remarks" towards him, *id.* ¶ 229, "fondled [Vazquez's] private parts causing an erection," *id.* ¶ 207, and exposed herself to him, *id.* ¶ 210. Cruz worked with Vazquez in the law library. *Id.* On or about June 6, 2019, Vazquez filed an informal grievance against Cruz, *id.* ¶ 229, and on or around June 7, 2019, a formal grievance, *id.* ¶ 245. Vazquez also filed a grievance against a John Doe official, "Usher," who observed Cruz's abuse and failed to intervene. *Id.* ¶¶ 237–40. For filing these grievances, Cruz terminated Vazquez from his job assignment in the law library. *Id.* ¶¶ 237–38. On or about June 7, 2019, Usher informed Vazquez that the termination was because Vazquez "filed grievances against [Usher] and [Cruz]," and because Cruz "felt uncomfortable" with Vazquez working in the law library "after [he] fil[ed] administrative grievances against her." *Id.* ¶¶ 237–38. On or around June 8, 2019, Vazquez submitted a grievance concerning the retaliation. *Id.* ¶ 245. He did not receive any reference number for, or responses to, these grievances. *Id.* ¶ 247. On June 18, 2019, as an act of retaliation for reporting the sexual abuse and retaliation, Vazquez was transferred to OBCC. *Id.* ¶ 261. As a result, Vazquez claims that he lost his job assignment and wages, and also lost "adequate legal access." *Id.* ¶¶ 288–90. At OBCC, Vazquez sought a "variance" to work in the law library, but he was denied because he is Hispanic. *Id.* ¶ 398–99. He was further denied opportunity to file a grievance regarding the racial discrimination. *Id.* ¶¶ 405–09.

### 3.      Indifference to Medical Needs

The AC alleges that the NYCDOC (and other defendants) have failed to provide him with adequate accommodations for his medical conditions.

On October 23, 2019, an orthopedic doctor diagnosed Vazquez with bilateral *hallux limitus* (a condition where movement of the big toe is restricted to varying degrees), the onset of arthritis in the "same areas," and flat footedness. *Id.* ¶ 413. These conditions together cause Vazquez "extreme pain and discomfort." *Id.* ¶ 419. The doctor issued a medical order recommending Vazquez wear orthopedic footwear. *Id.* ¶ 414. The NYCDOC did not provide such footwear. *Id.* ¶¶ 416–18. On or around October 30, 2019, Vazquez filed an administrative grievance seeking permission to wear his own personal footwear or be provided with orthopedic footwear, *id.* ¶ 420, which was denied on November 6, 2019, *id.* ¶ 423. His later request for surgery to correct his *hallux limitus* was also denied, *id.* ¶¶ 456–57, despite the "extreme pain" caused by the "degenerative disease," *id.* ¶ 456.

On or about September 18, 2017, Vazquez informed medical staff that he suffers from sciatica, *id.* ¶ 460, a condition which causes pain down one or both legs from the lower back. He also alerted them to muscle loss in his right leg. *Id.* ¶ 461. On November 1, 2019, Vazquez submitted a grievance requesting appropriate bedding for his medical condition because the standard NYCDOC-provided mattress aggravated his condition, *id.* ¶ 462; the grievance was not acted upon, *id.* ¶ 467. The mattress caused Vazquez "sleep deprivation" and "rashes." *Id.* ¶ 466. To address his conditions, Vazquez sought appointments with specialists, but he did not receive any before his transfer to state custody. *Id.* ¶ 469. His medical records were not properly forwarded to the state officials. *Id.* ¶¶ 518–25.

## B.    Procedural History

On February 19, 2021, Vazquez filed a complaint, styled as a putative class action. It brought claims along the lines above against 31 entities and individuals, including correctional officers, attorneys, judges, and the New York State court system. Dkt. 2 (the "Complaint"). As initially brought, the Complaint's claims arose from three sets of incidents—at Rikers Island,

Attica, and during Vazquez's state criminal proceedings.  Vazquez also sought a temporary

restraining order to enjoin defendants, *see* Dkt. 4, which the Hon. Louis L. Stanton, United States

District Judge, denied on March 1, 2021, *see* Dkt. 7.  On March 22, 2021, Vazquez filed a

motion for reconsideration of that denial.  Dkt. 8.

On May 17, 2021, the Court issued a decision dismissing the complaint in part, but

allowing Vazquez to replead certain claims.  *See* Dkt. 12.  It gave Vazquez leave to amend as

follows:

> In light of Vazquez's *pro se* status, the Court grants him 60 days' leave to amend
> his complaint to detail his claims that he was subjected to unconstitutional
> conditions of confinement in Rikers Island.  The Court does not, however, grant
> Vazquez leave to replead his claims against immune parties (*i.e.*, judicial officers,
> prosecutors, and state agencies); parties against whom § 1983 claims may not lie
> (*i.e.*, private defense attorneys and state FOIL officers); claims that are barred by
> the *Younger* abstention doctrine (*i.e.*, those seeking to interfere with pending state
> criminal charges against Vazquez); or claims for which venue is not proper in this
> District (*i.e.*, those arising out of Vazquez's detention at Attica in the Western
> District of New York).  Nor does the Court grant leave to replead his class claims,
> given his *pro se* status.  Leave to replead such claims would be futile, and even a
> liberal reading of the complaint does not give "any indication that a valid claim
> might be stated" as to these allegations in this action.  *Cuoco*, 222 F.3d at 112
> (quoting *Gomez*, 171 F.3d at 795).

*Id.*  On July 28, 2021, Vazquez filed the AC, *see* Dkts. 18–19, along with a motion seeking a

temporary restraining order to disqualify this Court on account of alleged bias against Vazquez,

*see* Dkts. 16–17.  On July 30, 2021, the Court denied that motion.  Dkt. 21.

On February 15, 2022, the City moved to dismiss the AC.  *See* Dkts. 55–56.  On March

25, 2022, Vazquez opposed the motion.  *See* Dkt. 60.  On April 8, 2022, the City replied in

support of its motion, to which Roth joined.  *See* Dkt. 61.

On June 17, 2022, Judge Figueredo issued the Report, which recommends dismissal of all claims against the City and Roth. *See* Dkt. 66. On July 12, 2022, Vazquez objected to the Report.[4] On September 2, 2022, the City responded to Vazquez's objections. Dkt. 90.

C.    **Current Status of Other Defendants**

The City and Roth have appeared and answered the AC. All other defendants in this matter, including numerous John and Jane Does, have not appeared or otherwise participated in this action. On August 15, 2022, Vazquez filed a motion seeking a *Valentin* order from the Court to assist in serving process on all unserved defendants and for identification of all John and Jane Does. *See* Dkts. 79–81. That motion is pending resolution of the City and Roth's motion to dismiss. On September 8, 2022, Judge Figueredo stated that she would rule on that motion after this Court's resolution of the motion to dismiss. *See* Dkt. 93. The Report does not address the claims, in substance, directed towards any defendants other than Roth and the City. *See* Report at 1 n.2.

II.    **Applicable Legal Standards**

A.    **Reviewing a Report and Recommendation**

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are timely made, "[t]he district judge must

---

[4] On July 11, 2022, after the 14-day period for objections, the Court, having received none, issued an opinion and order adopting the Report in full. *See* Dkt. 67. The next day, the Court received objections from Vazquez, which had been mailed to the Court. *See* Dkt. 68. On July 18, 2022, the Court issued an order stating that it would consider the objections. *See* Dkt. 69.

Separately, on September 1, 2022, before the City filed its response, Vazquez filed on the docket a Second Amended Complaint ("SAC") without leave from the Court, *see* Dkts. 87–89 (stricken document). On September 8, 2022, Judge Figueredo denied Vazquez's motion to amend and struck the SAC. *See* Dkt. 93.

determine *de novo* any part of the magistrate judge's disposition that has been properly objected

to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38

(2d Cir. 1997). "To accept those portions of the report to which no timely objection has been

made, a district court need only satisfy itself that there is no clear error on the face of the record."

*Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y.

Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4

(S.D.N.Y. July 8, 2009)); *see also, e.g.*, *Wilds v. UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

To the extent that the objecting party makes only conclusory or general objections, or

simply reiterates the original arguments, the Court will review the Report and Recommendation

strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094,

at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH),

2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). "This is so even in the case of a *pro se*

petitioner." *Perez v. Mason Tenders Dist. Council Tr. Funds*, No. 17 Civ. 1022 (PAE) (AJP),

2017 WL 5125542, at *2 (S.D.N.Y. Nov. 1, 2017), *aff'd*, 742 F. App'x 584 (2d Cir. 2018).

Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate

judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE),

2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (collecting cases).

**B.     Motion to Dismiss Under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The Court is "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting it "to raise the strongest arguments that [it] suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks and citation omitted). The Court may not read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted).

## C.    Section 1983

Section 1983 provides redress for the deprivation of federally protected rights by persons acting under state law. 42 U.S.C. § 1983. To prevail on a Section 1983 clam, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978).

### 1.    Personal Liability Under Section 1983

To establish personal liability under Section 1983, a plaintiff must show that the defendant was "personally or directly involved in the violation," *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 431 (S.D.N.Y. 2016) (quoting *Harris v. Westchester Cnty.*

9

*Dep't of Corr.*, No. 06 Civ. 2011 (RJS), 2008 WL 953616, at *9 (S.D.N.Y. Apr. 3, 2008))—that

is, that there was "personal participation by one who has knowledge of the facts that rendered the

conduct illegal," *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001); *accord Farrell*

*v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983." (internal quotation marks and citation omitted)).

### 2.    Municipal Liability Under Section 1983

Municipal liability in a Section 1983 action may not be based on *respondeat superior* or

vicarious liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, municipal

governing bodies such as the City may be liable under Section 1983 only where "a violation of

rights resulted from the 'government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy.'"  *Nagle v. Marron,* 663

F.3d 100, 116 (2d Cir. 2011) (quoting *Monell,* 436 U.S. at 694).  To establish liability under

*Monell*, a plaintiff must show, in addition to a violation of his constitutional rights, "(1) the

existence of a municipal policy or custom . . . that caused his injuries beyond merely employing

the misbehaving officer[s]; and (2) a causal connection—an 'affirmative link'—between the

policy and the deprivation of his constitutional rights."  *Harper v. City of New York*, 424 F.

App'x 36, 38 (2d Cir. 2011) (summary order) (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d

40, 44 (2d Cir. 1985)) (internal quotation marks omitted); *Wray v. City of New York*, 490 F.3d

189, 195 (2d Cir. 2007); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004)

("[C]onstitutional torts committed by city employees without official sanction or authority do not

typically implicate the municipality in the deprivation of constitutional rights, and therefore the

employer-employee relationship is in itself insufficient to establish the necessary causation."

(cleaned up)).

> A plaintiff can establish the existence of a policy or custom by demonstrating:
> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations

omitted) (collecting cases); *Calderon v. City of New York*, 138 F. Supp. 3d 593, 611–12

(S.D.N.Y. 2015), *reconsideration in part granted on other grounds*, 2015 WL 6143711

(S.D.N.Y. Oct. 19, 2015); *Spears v. City of New York*, No. 10 Civ. 3461 (JG), 2012 WL

4793541, at *11 (E.D.N.Y. Oct. 9, 2012).

## III.   Discussion

Vazquez raises four objections to the Report. First, he objects to the recommendation

that his claims of deliberate indifference by defendants to his medical needs—namely, to his

requests for orthopedic footwear, a special mattress and bedding accommodations for his

sciatica, and referrals to specialists—be dismissed. *See* Objections at 3–12. Second, he objects

to the recommendation to dismiss his claims that defendants failed to protect him from three

violent incidents with other inmates. *See id.* at 11–12. Third, he objects to the recommendation

to dismiss his claims that defendants discriminated and retaliated against him. *See id.* at 13–16.

Fourth, he objects to the recommendation that he be denied leave to amend his complaint again.

*See id.* at 20–21. The Court reviews *de novo* each of these recommendations.

Vazquez also makes three arguments that are not directly responsive to the Report's

recommendations. First, he argues that the Report fails to address his claims based on the

Driver's Privacy Protection Act ("DPPA"). *See id.* at 17. Second, he argues that his request for

a settlement conference has gone unheeded by the Court. *See id.* at 21–22. Third, he argues that

the judiciary, including this Court and Judge Figueredo, has discriminated against him, and engaged in improper "cherry-picking" with respect to various aspects of factual and legal analysis in decisions so far rendered. *See id.* at 18.

After liberally construing Vazquez's objections, the Court identifies only two parts of the Report to which he does not object. The first is the recommendation to dismiss claims sounding in violations of procedural due process. *See id.* at 16. The second is the recommendation that two sets of claims, although untenable against the City and Roth, be allowed to proceed against other defendants: of retaliation in violation of his First Amendment rights, and of sexual abuse. *See id.* The Court reviews these recommendations for clear error. *See Dickerson*, 2013 WL 3199094, at *1.

### A.    The Recommendation to Dismiss the Deliberate Indifference Claims

To establish a defendant's "deliberate indifference" to a violation of law, a plaintiff must show that the defendant acted with a sufficiently culpable state of mind. Somewhat different tests for "deliberate indifference" apply to Section 1983 claims depending on whether the underlying violation is of the Eighth or Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 33 (2d Cir. 2017).

Under each, the plaintiff must prove an objective component and a subjective component. As to the former, for both types of claims, the inmate must "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* (citation omitted). The alleged deprivation must be, in objective terms, "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). As to the subjective component, the standards differ. Under the Eighth Amendment, the defendant state official must have had a reckless state of mind equivalent to the

"more exacting *subjective standard* akin to that used in the criminal context . . . requir[ing] proof of . . . subjective awareness" of the constitutional violation. *Darnell*, 849 F.3d at 32 (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)) (emphasis added).  Under the Fourteenth Amendment, however, the defendant must have acted with *objective* recklessness with respect to the violation. *Id.* at 35.  The plaintiff must show that "the defendant acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk the condition posed to the pretrial detainee while either knowing, or under circumstances where he should have known, that the condition posed an excessive risk to health or safety"; the *mens rea* required for a deliberate indifference claim of this nature thus "is defined objectively." *Id.*  This standard for deliberate indifference applies to any underlying due process violation, including maintaining unconstitutional conditions of confinement or failing to protect a person in state custody. *Id.* at 33 n.9.

The Report correctly notes that it "is not apparent from the AC . . . [when] he was a pretrial detainee as opposed to a convicted prisoner"; it, therefore, analyzes the claims under both the Eighth and Fourteenth Amendments.  Report at 11 n.6.

### 1.    Foot Conditions and Orthopedic Footwear

The Report recommends dismissal of Vazquez's claims alleging deliberate indifference to his foot conditions and need for orthopedic footwear for failure to satisfy both the objective and subjective prongs. *See id.* at 13.

The AC alleges that Vazquez suffers from foot conditions including bilateral *hallux limitus* and arthritis, which require him to wear specialized orthopedic footwear, cause him "extreme pain," and require imminent surgery to avoid worsening the conditions. *See* AC ¶¶ 413, 416–18, 420, 423, 456–57.  These claims fail the objective prong, the Report explains, because the AC does not include any factual allegations explaining "the seriousness of the

condition, the kind of pain suffered, the length of time that he suffered pain, or how the pain affected his daily activities," Report at 13–14, "how the deprivation of orthopedic footwear caused a worsening of his foot condition, beyond a conclusory statement that the footwear provided by the prison can 'aggravate, worsen, and create medical foot problems,'" *id.* at 14 (quoting AC ¶¶ 418–19), or whether his foot conditions constitute "a sufficiently serious medical condition," *id.* In support, the Report collects numerous cases holding pain and inconvenience resulting from the compulsory use of institutional footwear insufficiently serious to satisfy the objective prong of the deliberate-indifference standard. *See id.* at 13–15. As to the subjective prong, the Report concludes that the AC fails to allege facts indicating that either Roth or the City knew or should have known about his serious foot condition, *see id.* at 15, and that the only individual defendant who, as pled, may have known about the condition is a John Doe correctional officer named "Alexander," to whom Vazquez allegedly handed a paper copy of his diagnoses, *see id.*

Vazquez's objections are substantially directed towards the Report's conclusions on the objective prong. He urges that the AC sufficiently "explain[s] the seriousness of [his] foot condition." Objections at 4. That is unpersuasive. From the AC, the Court can "reasonabl[y] infer[]" that "the kind of pain [he] suffered was foot pain," which "affected [his] daily activity of walking and standing," Objections at 3 (quoting AC ¶¶ 413–419), and resulted from his stated medical diagnoses of bilateral *hallux limitus* and the onset of arthritis. But under the assembled case law, as cited in the Report, such factual assertions do not meet the threshold set by the objective prong. *See* Report at 13–15 (collecting cases).

In any event, even if the AC adequately pled the seriousness of his condition, his claims clearly fail the subjective prong, as the Report concludes. *See id.* at 6–7. Only one John Doe

correctional officer named "Alexander" is linked to the alleged indifference to Vazquez's foot

conditions.  The AC alleges that Vazquez gave "Alexander" a copy of his medical orders, *see*

AC ¶ 428, but that "Alexander" ignored these after conferring with another unnamed officer and

confiscating Vazquez's orthopedic sneakers, *see id.* ¶ 429.  These allegations do not in any way

link inspector general Roth to this situation or plead his deliberate indifference to it.  Nor, as

required by *Monell*, does it provide a factual basis on which to infer a policy or custom by the

City to deny orthopedic footwear to inmates with serious foot conditions.

The motion to dismiss by Roth and the City as to these claims therefore must be granted.

### 2.     Denial of Accommodations for Sciatica

The Report recommends dismissal of Vazquez's claims alleging deliberate indifference

to sciatica, a back condition, for failure to satisfy the objective and subjective prongs.  *See*

Report at 16–20.  As to the former, the AC, it concludes, lacks allegations that "sciatica presents

an objectively serious medical need," *id.* at 16; *see Williams v. Smith*, No. 02 Civ. 4558 (DLC),

2009 WL 2431948, at *8 (S.D.N.Y. Aug. 10, 2009), and makes only the "threadbare allegation

that [Vazquez's] sciatica was 'very painful,' without any indication as to how long the pain

lasted or how the condition affected his daily activities"; such, it finds, "is insufficient to plead

an objectively serious medical need," Report at 16 (quoting AC ¶ 460).  Nor does the AC

"allege[] facts from which one could reasonably infer that the denial of 'appropriate bedding'

caused a worsening of his sciatica or back pain or that his condition even required a non-standard

bed."  *Id.* at 17.  Vazquez "does not allege that he was obtaining physical therapy or medication

for the treatment of his sciatica—allegations that would help to show that [his] condition was

objectively serious."  *Id.*  As to the subjective prong, the AC "alleges no facts concerning any

defendant's knowledge of [Vazquez's] sciatica condition or back pain—it only states that 'NYC,

NYDOC, Comm. Brann, John/Jane Does refused to provide Plaintiff with a mattress to accommodate his medical conditions,'" *id.* at 18 (quoting AC ¶ 467).

Vazquez's objections again center on the objective requirement. In defending the AC's allegations as to the seriousness of his condition and its impact on his daily activities, he points to various parts of the AC. For example, as to the impact of the condition on his daily activities, Vazquez writes that "[a] reasonable inference could have been drawn" "that the daily activity of walking and standing was substantially affected by sciatic condition in addition to my foot condition," Objections at 8 (quoting AC ¶ 419). But, as the surrounding paragraphs make clear, the cited paragraph of the AC appears in a section that does not describe his sciatica, but only his foot condition and its associated pain:

> 418) The footwear provided by the NYCDOC is not Orthopedic and/or supportive and can actually aggravate, worsen and create medical foot problems.
> 419) *The serious medical conditions affected Plaintiff's daily activities, such as walking and standing, that prompted him to seek medical attention, which diagnosis found the cause of his extreme pain and discomfort.*
> 420) On or around October 30, 2019, Plaitniff [sic] submitted an administrative grievance, #257937, requesting to be given his own personal footwear and/or be provided with Orthopedic Footwear.

AC ¶¶ 418–20 (emphasis added). There is no non-speculative basis upon which to read ¶ 419 as referring to Vazquez's back condition. The Report thus is correct that the AC makes only "wholly conclusory allegation[s]" about that condition. Report at 17–18. And the "naked assertion that he suffered pain, a rash, and 'sleep deprivation' as a result of an inadequate bed or mattress, even liberally construed, is insufficient to raise a plausible claim of a constitutional violation," *id.* (quoting AC ¶ 466). [5]

---

[5] In his Objections, Vazquez states that after filing the AC he received physical therapy and pain medication for this condition. *See* Objections at 68. Those allegations are not cognizable on the motion to dismiss. But, even if they were, and even if they salvaged the AC as to the objective prong, his claims still fail the necessary subjective prong, for the reasons that follow.

As to the subjective prong, the AC does not allege any facts on which it could be found that the City or Roth knew or should have known that "sciatica or denial of appropriate bedding posed a serious or unreasonable risk to [Vazquez's] health or safety," *id.* at 19. The AC states that Vazquez submitted an administrative grievance "requesting to be given appropriate bedding for his medical condition because the mattreses [sic] given out by the NYCDOC aggravated [his] Sciatic condition," AC ¶ 462. But that submission to an unspecified recipient within NYCDOC does not support that the City or Roth "knew, or should have known, that the condition posed an excessive risk to health or safety," *Darnell*, 849 F.3d at 35, let alone that, as to the City, there was a custom or policy to ignore such grievances. The AC's allegations are insufficient, under even the most liberal pleading standards, to satisfy the subjective prong as to the moving defendants.

The Court accordingly dismisses the AC's deliberate indifference claims against Roth and the City as to his sciatica.

### 3.   Denial of Access to Foot Surgery and Medical Specialists

The Report recommends dismissal of Vazquez's claims against Roth and the City that he was denied access to foot surgery and medical specialists, again on the grounds that the AC fails to allege facts to support either of the prongs of the deliberate-indifference standard for these claims.

The AC alleges that the NYCDOC denied Vazquez's request for surgery for his *hallux limitus* foot condition "that caused him extreme pain and is degenerative in nature," AC ¶ 457, on the ground that it would be "elective surgery," *id.* ¶¶ 456–57. He was also allegedly denied access to specialists including a neurologist and a podiatrist, *id.* ¶ 467, despite being told he had appointments with both, *id.* ¶ 515.

As above, to plausibly plead a § 1983 claim based on such lapses, a plaintiff must allege that he was subjected to objectively sufficiently serious harmful conditions. *Wilson v. Seiter*, 501 U.S. 294, 297–98, 303 (1991), requires the Court to assess, first, whether it is pled that "the prisoner was actually deprived of adequate medical care" and, second, "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). A plaintiff must also plausibly plead that the defendant official acted with deliberate indifference, in other words, that "the official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553).

As to the denial of appointments, the Report correctly reasons that the AC "does not explain why [Vazquez] needed an appointment with a neurologist," Report at 20, nor does it "provide any explanation for why the denial of an appointment with a podiatrist created an unreasonable risk of serious damage to his health," *id.*, all showings required under the objective prong. And as to the denial of foot surgery, as the Report assesses, the AC's "allegations concerning the denial of surgery are bare and do not establish that he suffered from a sufficiently pressing and serious medical need that warranted immediate surgery," *id.*, and its claim of "extreme pain" is conclusory, *id.* at 21. The AC's allegations thus fall well short of a "deprivation . . . sufficiently serious such that the medical condition might have produced death, degeneration, or extreme pain." *Patterson v. Ponte*, No. 16 Civ. 3156 (JCF), 2017 WL 1194489, at *6 (S.D.N.Y. Mar. 30, 2017), *report and recommendation adopted*, No. 16 Civ. 3156 (PAE) (JCF), 2017 WL 1405753 (S.D.N.Y. Apr. 17, 2017) (internal quotations omitted). Vazquez's objections to these conclusions do not add content, but merely restate that the denial of surgery and appointments were acts of deliberate indifference. *See* Objections at 11.

The AC's allegations against Roth and the City also fail to satisfy the subjective prong. As the Report explains, the AC does not "allege any facts concerning any defendant's knowledge of his conditions in connection with his denial of surgery for his foot or the denial of appointments with health specialists." Report at 21. Instead, Vazquez "only asserts that he submitted administrative grievances, but there are no allegations that any of the individual defendants would have known about such grievances." *Id.* Vazquez does not make any objections to the Report's analysis of the subjective prong.

The Court accordingly dismisses the AC's deliberate indifference claims against Roth and the City based on a denial of access to foot surgery and specialists.

**B.    The Recommendation to Dismiss the Failure-to-Protect Claims**

The Report next recommends dismissal of the claims that Roth and the City failed to protect him from three known-to-be-dangerous inmates, resulting in three assaults against him, on the ground that the AC does not allege facts suggesting that these defendants knew, or should have known, that the inmates in question were likely to attack Vazquez.

The AC alleges that the inmates who attacked Vazquez had mental health issues and/or violent tendencies, which should have alerted prison officials to their dangerousness. *See* AC ¶¶ 73–74, 80–81, 84, 90–91. Instead, the inmates were permitted to remain in open dormitory housing, *see, e.g., id.* ¶ 96, leaving Vazquez vulnerable to their assaults. Further, the prison officials engaged in "intentional and willful misreporting of violent incidents," creating an "atypical and significant violent prison condition." *Id.* ¶¶ 90–91.

"The Constitution imposes a duty on prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Luckey v. Jonas*, No. 18 Civ. 8103 (AT) (KNF), 2019 WL 4194297, at *3 (S.D.N.Y. Sept. 4, 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials have a duty to protect other inmates from "violence at the hands of other

19

prisoners." *Farmer*, 511 U.S. at 833.  But not every injury sustained in an inmate-on-inmate

assault "translates into constitutional liability for prison officials responsible for the victim's

safety." *Id.* at 834.  Rather, a prison official's failure to protect a pretrial detainee rises to the

level of a Fourteenth Amendment violation only "where the officer acted with 'deliberate

indifference to a substantial risk of serious harm to an inmate.'" *Rosen v. City of New York*, 667

F. Supp. 2d 355, 359–60 (S.D.N.Y. 2009) (quoting *Farmer*, 511 U.S. at 828).  "[M]ere

negligence" is not sufficient. *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

The Eighth Amendment poses a more exacting standard: a plaintiff must allege that prison

officials were subjectively aware of an excessive risk to inmate health or safety and disregarded

that risk. *Farmer*, 511 U.S. at 837; *Zimmerman v. Macomber*, No. 95 Civ. 0882 (DAB), 2001

WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001).

      The Second Circuit has identified two showings an inmate must make to establish a claim

for deliberate indifference to unconstitutional conditions of confinement:  A pretrial detainee

must satisfy (1) "an 'objective prong' showing that the challenged conditions were sufficiently

serious to constitute objective deprivations of the right to due process"; and (2) a "*mens

rea* prong" showing "that the officer acted with at least deliberate indifference to the challenged

conditions." *Darnell*, 849 F.3d at 29.  Courts in this District have held that this

"*Darnell* framework" applies to failure-to-protect claims. *See, e.g.*, *Brown v. Warden NYCDOC

MDC*, No. 20 Civ. 2144 (LLS), 2020 WL 1911186, at *3 n.3 (S.D.N.Y. Apr. 17, 2020); *Luckey*,

2019 WL 4194297, at *3; *Taylor v. City of New York*, No. 16 Civ. 7857 (NRB), 2018 WL

1737626, at *12 (S.D.N.Y. Mar. 27, 2018).

      As the Report notes, however, the AC fails to plead facts supporting the subjective prong,

as it lacks "allegations that any particular [d]efendant knew, or should have known, of any

specific or direct threat made against [Vazquez] by Williams, Quiles, Jeffrey, or any other inmate." Report at 25. Even liberally construed, it is devoid of factual allegations that Roth or the City had a "culpable state of mind under the Eighth or Fourteenth Amendment standard," such that either was "deliberately indifferent in failing to protect him from these attacks." *Id.* The Report cites numerous apposite cases dismissing failure-to-protect claims where plaintiffs have similarly failed to allege facts going to the named defendants' knowledge. *See id.* (collecting cases).

Reading Vazquez's objections liberally, these do not contain any counter to the Report's analysis. His principal rebuttal is that the attacks happened in close "temporal proximity," *see* AC ¶¶ 104, 310–11, to his complaints against Cruz for sexual abuse; he therefore infers that officials failed to protect him out of retaliatory animus for those complaints. *See* Objections at 12. Vazquez also reiterates the AC's conclusory allegation that NYCDOC deliberately underreports violence in the dormitories, leading to further violence. *See id.* But these allegations, even if treated as cognizable, do not fill the hole in the AC as to defendants' requisite knowledge. Accordingly, because the AC does not viably plead a failure-to-protect claim under the Eighth or Fourteenth Amendments, the Court dismisses these claims against Roth and the City.

### C.     The Recommendation to Dismiss the Claims Based on Retaliation and Discrimination

The Report recommends dismissal of the claims of retaliation and discrimination following Vazquez's reports of sexual abuse by Cruz and Usher. *See* Report at 27–33. The AC alleges that Cruz sexually abused him, verbally and physically, in the prison library, and that Vazquez filed a series of grievances against the two, with the claims against Usher based on his failing to intervene despite observing Cruz's misconduct. AC ¶¶ 229–45, 61, 87. The AC

alleges that Cruz and Usher retaliated for the grievances by (1) immediately terminating Vazquez from his law library job, *id.* ¶¶ 261, 287; and (2) in "temporal proximity," transferring him to OBCC on June 18, 2019, *id.* ¶¶ 288–90. At OBCC, Vazquez was allegedly denied a job because of his race. *Id.* ¶¶ 398–412. Because the retaliation and discrimination claims are factually interwoven, the Court discusses them together.

To state a First Amendment retaliation claim, a complaint must make non-conclusory allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Adverse action is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Id.* at 381 (alteration in original) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citation omitted)). This objective inquiry "must be tailored to the different circumstances in which retaliation claims arise." *Justice v. McGovern*, No. 11 Civ. 5076, 2012 WL 2155275 (JS) (WDW), at *4 (E.D.N.Y. June 12, 2012) (quoting *Davis*, 320 F.3d at 353) (internal quotation marks omitted). For example, "[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* (quoting *Davis*, 320 F.3d at 353) (cleaned up).

In finding a failure to state a retaliation claim against Roth or the City, the Report differentiates them from Cruz and Usher, as to whom it finds Vazquez plausibly pled that he was retaliatorily dismissed from his job (though it finds otherwise as to the claim regarding the transfer to OBCC). Report at 27–31. Vazquez's objections do not address Roth and the City.

Rather, these address defendants writ large, including those who have not appeared, which include Cruz, Usher, Warden Caputo, and the NYCDOC, *see* Objections at 13–14; *see also* Report at 31 ("[A]lthough Plaintiff has not alleged sufficient facts to adequately plead a First Amendment retaliation claim based on his transfer to OBCC, he has alleged sufficient facts to plead a First Amendment retaliation claim, as against defendants Cruz and Usher, based on the loss of his law library job."). The objections thus do nothing to salvage the claims against Roth, as there are no facts pled that she participated in, knew, or should have known about the alleged retaliation, or against the City, under a theory of municipal liability via a policy or practice of promoting or tolerating retaliation for such complaints.

The Report also finds wanting the AC's discrimination claims against these defendants, based on the alleged denial of a job, at the OBCC, on account of Vazquez's race. AC ¶¶ 398–412. As the Report explains, "[t]o plead a facially valid Equal Protection claim, a plaintiff must allege: '(1) that he [or she] has been treated differently from similarly-situated inmates, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race.'" Report at 31 (quoting *Gilliam v. Baez*, No. 15 Civ. 6631 (KMK), 2017 WL 476733, at *7 (S.D.N.Y. Feb. 2, 2017) (citation omitted)). The plaintiff must also make a showing of discriminatory intent on the part of the defendants. *See Iqbal*, 556 U.S. at 676; *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). The Report notes that even if a prisoner had a protected right or interest in a job assignment, which courts have held they do not, *see* Report at 32 (citing *Gill*, 824 F.2d at 194), the AC nowhere alleges "facts supporting an inference that any individual Defendant acted with a specific discriminatory intent when refusing to provide Plaintiff a job in the OBCC law library." *Id.* Vazquez, in his objections, does not more than restate allegations in the AC, but these do not provide a non-speculative basis to infer

discriminatory intent by Roth or the City. *See* Objections at 15–16 ("I specifically allege that other similarly situated African-American inmates were given variances to work in the Law Library and other sensitive areas. . . . A reasonable inference could have been drawn that from these factual allegations I was treated differently than other similarly situated African-American inmates because of my race and denied a variance given to them . . . .").

Accordingly, the Court adopts the recommendation to dismiss the discrimination claims against Roth and the City.

### D.     The Recommendation to Deny Leave to Amend

In the Second Circuit, "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (cleaned up). Indeed, Federal Rule of Civil Procedure 15(a)(2) states that leave to amend should be "freely give[n] . . . when justice so requires."

However, a court may dismiss the claims of a *pro se* litigant without leave to amend when "the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citing *Moorish Sci. Temple v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)), the claim is "based on an indisputably meritless legal theory," *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (cleaned up), or "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted); *see also Fulton v. Goord,* 591 F.3d 37, 45 (2d Cir. 2009) (internal quotation marks omitted).

Here, Vazquez has already amended his complaint once, and it is apparent that further amendments will be unable to cure the deficiencies in its claims against Roth and the City. Vazquez's objections tellingly do not point to factual material capable of plugging the holes in

the above claims, which are particularly gaping as to the subjective prong of these claims. Any attempt by Vazquez to replead these claims would be futile. The Court therefore dismisses the Section 1983 claims against Roth and the City with prejudice. *See Cuoco,* 222 F.3d at 112 (leave to amend *pro se* complaint denied where amendment would be futile); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citation omitted) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice).

Vazquez is correct that the Report advises him to amend his complaint to plead whether he was a pretrial detainee or state prisoner at the time of the various claims. *See* Report at 38; Objections at 20–21. But amending the AC in this limited fashion, while clarifying the claims against others, would not do anything to fortify the claims asserted against Roth and the City. The Court therefore adopts the recommendation, *see* Report at 41–42, to deny leave to amend the AC further as to the City and Roth.

### E.    Other Claims

The Report addresses several additional claims.

#### 1.    Sexual Abuse

The Report recommends that Vazquez's claims of sexual abuse perpetrated by Cruz and Usher be dismissed as against the City and Roth, while noting such claims may be viable as against other defendants, including Cruz and Usher. *See id.* at 35–38. It recommends that Vazquez should be afforded an opportunity to amend the AC's sexual abuse claims against other defendants, so as more clearly to plead whether he was a pretrial detainee or convicted prisoner at the time of the alleged abuse, *id.* at 38, to enable application of the governing legal standards to these claims. Vazquez does not object to these recommendations. Accordingly, the Court reviews these for clear error. The Court finds none. The Report is persuasive that Vazquez

should be permitted to pursue his sexual abuse claims against parties yet to be served, and to amend for the limited purpose of clarifying his status at the pertinent points. The Court adopts this recommendation, while dismissing the sexual abuse claims as against Roth and the City.

### 2.   Procedural Due Process Claims

Construing the AC liberally, the Report identifies two possible due process claims that its allegations may support. *See id.* at 33–35. Both involve potential appeals for reprimands received after the altercations with other inmates. Although the Report undertakes an analysis of these claims—ultimately determining they are not sufficiently pled—Vazquez, in his objections, does not embrace these claims. He writes: "I do not raise Procedural Due Process claims. . . . I respectfully OBJECT to Judge Figueredo's mischaracterization of my condition of confinement claims." Objections at 16 (emphasis in original). Accordingly, the Court will not read the AC to allege procedural due process claims along these lines.

### 3.   *Monell* Claims

The AC does not allege any facts that would plausibly plead that the claimed violations of his rights derived from a municipal policy or custom. *See Nagle*, 663 F.3d at 116. The Report notes several instances at which the AC conclusorily alleges the existence of a municipal policy relating to the alleged violation. *See* Report at 39–40 (*e.g.*, policy to not allow medical accommodations for serious medical needs of inmates; policy to manipulate the grievance procedures to prevent the exhaustion of administrative remedies; policy to intentionally misreport disciplinary infractions by prison officials). But, as the Report rightly analyzes, "for each of those allegations, [Vazquez] does not include any factual support for his conclusory assertion that the City had a practice or policy, or a connection between the alleged policy and a violation of Plaintiff's constitutional rights." *Id.* at 40. Even as to claims against parties that may have proved viable—for example, the sexual abuse claims against Cruz and Usher—the AC

does not link these to any municipal policy or custom, beyond the conclusory statements that supervisory officials knew of the harms and failed to intervene. *See* AC ¶ 143. This is "a paradigmatic pleading that contains no more than 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action,' neither of which move the allegations" of municipal policies or customs that led to the violation of his constitutional rights "across the line from possible to plausible." *Carpinone v. City of New York*, No. 11 Civ. 2074 (PAE), 2012 WL 760073, at *2 (S.D.N.Y. Mar. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678). The Court's dismissal of the City from this case is accordingly with prejudice, as Vazquez, including in his objections, has not cited any factual basis on which even a viable claim against an individual defendant could be linked to a municipal custom or practice.

### F.    Other Issues

Vazquez raises several other issues in his objections.

#### 1.    DPPA Claims

Vazquez objects that the Report does not address his claims arising under the DPPA. *See* Objections at 17–18. There is good reason for that. The Complaint, *see* Complaint at 45–46, and AC, *see* AC ¶¶ 369–81, do contain such claims. The AC alleges that John and Jane Doe defendants, along with a John Doe correctional officer named "Herrera," stole Vazquez's social security card and driver's license, violated his privacy, and used his personal information to open "fraudulent accounts," AC ¶ 380, and incur "financial/legal liabilities" in his name, *id.*; *see id.* ¶¶ 369–81. But they do not plead involvement by Roth or the City in these alleged wrongs. Accordingly, although Vazquez is at liberty to pursue such claims against other defendants, no

such claims have been made, or will be permitted to be added, against the City and Roth, the only moving defendants here.[6]

### 2.    Demand for Settlement Conference

In his objections, Vazquez demands a settlement conference with counsel for the City. *See* Objections at 21–22. If the City refuses to settle, Vazquez states that he will contact the media to alert to "judicial/official corruption obstructing an investigation into these very serious matters." *Id.* at 22. The Court will not compel the City to participate in a settlement conference, as it has not expressed any interest in doing so. Should there be mutual interest in a settlement conference, the Court will then issue an order of referral to Judge Figueredo.

### 3.    Service of Process

In his objections, Vazquez takes issue with the "Court's refusal to allow service of process and/or identify defendants," Objections at 19 (cleaned up). The Court agrees that Vazquez is "entitled to receive assistance from the District Court in identifying and serving the defendants in this case," *id.*, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997). The docket reflects a pending motion from Vazquez for a *Valentin* Order, filed after the Report was issued. *See* Dkt. 79. On September 8, 2022, Judge Figueredo issued an order stating, *inter alia*, that she "will address the *Valentin* Motion once the objections to the pending [Report] before Judge Engelmayer are resolved." Dkt. 93.

---

[6] Because these claims are not the subject of the motion to dismiss or the Report, the Court has no occasion to assess the viability of these claims. To the extent that the AC's references to the New York City Department of Motor Vehicles, *see* AC ¶¶ 369–81, theoretically could relate to a DPPA claim against the City, the AC does not allege the unlawful disclosure of personal information of Vazquez's "from a search of DMV records by a DMV employee or authorized DMV reseller," *see Fontanez v. Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014).

### 4.    Attacks on the Judiciary

In his objections, Vazquez personally attacks the three judges who have been involved in

this case—Judge Stanton, Judge Engelmayer, and Judge Figueredo, stating that:

> [s]ince the beginning of this action, every single judge [has] mischaracterized the
> factual allegations for the sole purpose of dismissing this lawsuit. . . . This pattern
> of cherrypicking and mischaracterization is prevalent and is a clear indication of
> the [racial][7] bias of the sitting judges. . . . The only remedy for the Court's bias is
> to show its corrupt intent to dismiss my lawsuit to allow prison officials to sexually
> abuse inmates without fear of legal consequences.  Not only will I send this to the
> media with more damaging information, I will have outside people contact an
> investigative reporter.

Objections at 18.

Vazquez's screeds have no place in this litigation or this Court.  His baseless accusations

of racial bias are unsubstantiated, and do not add anything to his claims.  They disrespect the

laudable and significant work that judges in the Southern District of New York and the staff of

the Courts have done to give Vazquez's claims a fair reading.  His salvos at the professionals

working at this Court merit condemnation.  Critically, they do not provide any basis to reject any

part of Judge Figueredo's characteristically thorough, well-reasoned, and unbiased Report.

To the extent that these attacks amount to a request for the disqualification of any of the

judges involved thus far in this matter, it is denied.  Recusal is warranted only where "an

objective, disinterested observer fully informed of the underlying facts, [would] entertain

significant doubt that justice would be done absent recusal." *United States v. Carlton*, 534 F.3d

97, 100 (2d Cir. 2008) (citation omitted).  "[T]he public interest mandates that judges not be

intimidated out of an abundance of caution into granting disqualification motions." *Da Silva*

*Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 148–51 (S.D.N.Y. 2012), *objections overruled*

*sub nom. Moore v. Publicis Groupe SA & MSL Grp.*, No. 11 Civ. 1279 (ALC) (AJP), 2012 WL

---

[7] These brackets are present in the Objections.  They were not added by the Court.

12528637 (S.D.N.Y. Nov. 8, 2012).  Vazquez has not alleged any facts remotely indicative of

bias or incompetence on any judge's part.  He is entitled to contact media outlets and exercise his

First Amendment rights to write or otherwise speak out about his experiences while incarcerated

and while pursuing this litigation.  Those rights, however, do not license him to blackmail the

Court with the possible release of "damaging information."  Objections at 18.

   Vazquez's attacks on the judiciary are unfounded, and any implied motion for recusal of

any Judge involved in the matter thus far is denied.

## CONCLUSION

   For the foregoing reasons, the Court adopts the Report in full.  The Clerk of Court is

respectfully directed to terminate the motions pending at dockets 55 and 73 and to terminate

defendants the City and Roth.  For avoidance of doubt, Vazquez is at liberty to pursue all claims

in the AC as against defendants not parties to the motion to dismiss (*i.e.*, those who have either

not been served or identified).

   SO ORDERED.

                                        _Paul A. Engelmayer_
                                        Paul A. Engelmayer
                                        United States District Judge

Dated: December 2, 2022
       New York, New York